# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY ELISE SHEPPARD, | Case No. 1:23-cv-00803-SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| MARTIN O'MALLEY,<br>Commissioner of Social Security,[1] | |
| Defendant. | (Doc. 1) |

## I.   INTRODUCTION

Plaintiff Ashley Elise Sheppard ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") applications for disability insurance benefits ("DIB") and Supplemental Security Income (SSI) under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

---

[1] On December 20, 2023, Martin O'Malley was named Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html. He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant.").

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 10.)

## II.    FACTUAL BACKGROUND

On March 11, 2019, Plaintiff protectively filed claims for DIB and SSI payments, alleging she became disabled on August 1, 2010, due to left leg numbness and nerve damage, bulging discs, upper back tissue, anxiety, stress, learning disability, and a burning sensation in both hands. (Administrative Record ("AR") 17, 56, 57, 73–74, 92, 93, 107, 108, 251, 258, 301.)

Plaintiff was born on May 14, 1987, and was 23 years old on the alleged disability onset date. (AR 26, 56, 73, 92, 107.)  She has at least a high school education and can communicate in English. (AR 26, 300, 302.)  Plaintiff has previously worked as a clerk in a grocery store.  (AR 26, 49, 290, 302.)

**A.    Relevant Evidence of Record[3]**

Plaintiff began experiencing back pain in August 2010 when she felt her back "pop" while loading salads into a refrigerator case while working at a grocery store.  (AR 416.)  Magnetic resonance imaging (MRI) of her lumbar spine from September 2010 showed mild scoliosis and mild to moderate degenerative changes of the lumbosacral spine, including multilevel degenerative disc disease and facet arthropathy.  (AR 423, 851.)  The most significant finding was at the L4–L5 level, showing posterior disc protrusion.  (AR 423, 851.)

In April 2012, Plaintiff presented for a follow-up appointment for chronic back pain and medication refill.  (AR 671.)  She reported an improvement in pain level, function, and the level of activities of daily living.  (AR 671.)  Upon physical examination, Plaintiff had lumbar paraspinal muscle tenderness to palpation, decreased range of motion due to tenderness, and a positive straight leg raising test at 30 degrees, with no deformity noted.  (AR 671.)  She was noted to have good muscle tone, full strength to upper and lower extremities, and a steady gait.  (AR 671.)  An MRI of Plaintiff's lumbar spine taken in May 2012 continued to show a central disc bulge associated with a subtle tear involving the posterior annulus at the L4–L5 level.  (AR 808–09.)

Plaintiff presented for another medication refill appointment in July 2012, and reported a 40% improvement in pain level.  (AR 664.)  Her physical examination results were the same as her

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

prior appointment.  (AR 664.)  In December 2012, Plaintiff continued to complain of chronic low back pain.  (AR 648.)  It was noted that she did not require any supportive devices and was able to carry out all daily activities without assistance.  (AR 648.)  Her physical examination results were the same as before.  (AR 648.)

In March 2013, Plaintiff presented for a medication refill.  (AR 630.)  Upon physical examination, her results were the same, including lumbar paraspinal muscle tenderness to palpation, decreased range of motion due to tenderness, and a positive straight leg raising test at 30 degrees, with no deformity noted.  (AR 630.)  She was noted to have good muscle tone, full strength to upper and lower extremities, and a steady gait.  (AR 630.)  It was further noted that Plaintiff does not require any supportive devices and is able to carry out all daily activities without assistance.  (AR 630.)

Plaintiff reported no improvement to her pain in August 2013 following an epidural injection.  (AR 615.)  Her physical examination results were the same as prior appointments.  (AR 615–16.)  In September and October 2013, Plaintiff presented for a medical refill appointments.  (AR 606–610.)  Her physical examinations results were the same as before.  (AR 606–607, 610–11.)

An MRI of Plaintiff's lumbar spine performed March 2014 showed a "[d]iffuse bulge of L4–5 disc, causing mild narrowing of central canal and neural foramina, bilaterally."  (AR 435–36, AR 871–72.)  In June 2016, a follow up MRI showed "[s]table L4–5 spondylosis."  (AR 719.)

In January 2020, Plaintiff presented for a physical and requesting that disability forms be completed.  (AR 861–65.)  She reported taking pain medication and participating in physical therapy "without any success."  (AR 861.)  She was not taking any pain medication at the time of the appointment, only over the counter pain reliever.  (AR 861.)  Upon physical examination, Plaintiff was noted to walk slowly and with pain "changing position from sitting to standing."  (AR 862.)  Plaintiff demonstrated limited range of motion, tenderness of the paravertebral lower lumbar spine, and diminished strength due to pain.  (AR 862.)  She was assessed with chronic back pain and prescribed 800 mg of Ibuprofen.  (AR 863.)

Plaintiff presented for a telehealth appointment with Samrah Zaigham, M.D., in May 2020, regarding two abnormal skin lesions on her back.  (AR 1016–17.)  She reported no joint pain,

swelling, deformity, or muscle weakness.  (AR 1016.)

In February 2021, Plaintiff presented to the emergency department complaining of lower back pain resulting from her bending down to pick up a shovel.  (AR 915–20.)  Upon examination, Plaintiff had diffused spinal tenderness but due to pain the examiner was unable to complete the examination.  (AR 917.)  There were no deformities, no swelling, and no lower extremity edema noted.  (AR 917, 918.)  She was treated with Toradol and Flexeril.  (AR 1003.)  That same day, Plaintiff requested that Dr. Zaigham order another lumbar spine MRI.  (AR 1003.)

Plaintiff presented for another telehealth appointment with Dr. Zaigham in April 2021.  (AR 999–1000.)  Her MRI results indicated "mild degenerative disk disease at L4–L5 with posterior disk bulging without significant spinal canal or neural foraminal stenosis."  (AR 992, 999.)  Plaintiff requested "to be on disability."  (AR 999.)  Dr. Zaigham recommended heat, ice, and pain medication, and referred her to a neurosurgeon.  (AR 1000.)

In May 2021, Plaintiff presented to a neurosurgical spine specialist.  (AR 989–93.)  Upon examination, Plaintiff had limited range of motion due to pain, antalgic gait, and tenderness to palpation.  (AR 991.)  Her muscle strength and sensation were both normal.  (AR 991–92.)  The provider indicated that Plaintiff "may benefit" from steroid injections, after which Plaintiff could consider resuming physical therapy.  (AR 992.)

Plaintiff presented to Dr. Zaigham in June 2021 requesting that disability forms be completed.  (AR 996–98.)  She stated that she "cannot go back to work as she can't walk or sit for long periods of time and is also not able to lift weight about 10 lbs."  (AR 996.)  Upon examination, Plaintiff exhibited tenderness over thoracic and lumbar spine, positive straight leg raising test, full strength in all four extremities, normal range of motion of spine, and normal gait.  (AR 997.)

That same month, Dr. Zaigham completed a "Physical Medical Source Statement" form.  (AR 924–27.)  She noted that although she had been seeing Plaintiff since May 2020, she had only been seen in person twice.  (AR 924.)  Dr. Zaigham indicated that Plaintiff's diagnosis of lumbar disc herniation was "stable."  (AR 924.)  She opined that Plaintiff could sit for about two hours and stand/walk about two hours; needed a sit stand option with fifteen minutes of walking after sixty minutes of sitting; needed to elevate her legs fifteen percent of the workday; could lift ten pounds

4

rarely; occasionally twist, stoop, crouch, and climb; would be off task five percent of the workday; was capable of low stress work; would absent more than four days per month. (AR 925–26.)

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's applications for benefits initially on May 30, 2019, and again on reconsideration on March 25, 2020. (AR 17, 124–31, 141–52.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 153–81.) At the hearing on December 22, 2021, Plaintiff appeared with counsel by telephone and testified before an ALJ as to her alleged disabling conditions. (AR 40–49.) A Vocational Expert ("VE") also testified at the hearing. (AR 49–55.)

**C.     The ALJ's Decision**

In a decision dated January 14, 2022, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 17–28.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. §§ 404.1520, 416.920. (AR 19–28.) The ALJ decided that Plaintiff met the insured status requirements of the Act through September 30, 2013, and she had not engaged in substantial gainful activity since August 1, 2010, the alleged onset date (step one). (AR 19–20.) At step two, the ALJ found Plaintiff's following impairments to be severe: lumbar degenerative disc disease with radiculopathy and carpal tunnel syndrome. (AR 20–21.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 22.)

The ALJ assessed Plaintiff's residual functional capacity (RFC)[4] and applied the assessment at steps four and five. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.").

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) except she can stand/walk for four hours out of an eight-hour workday, and can occasionally balance, climb stairs and ramps, stoop, crouch, kneel and crawl; but cannot climb ladders, ropes or scaffolds.  [Plaintiff] can frequently use hand controls, and frequently handle and finger bilaterally.  She can occasionally operate foot controls.  She cannot have concentrated exposure to vibrations.

(AR 22–26.)  Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (AR 23.)

The ALJ determined that Plaintiff could not perform her past relevant work (step four) but that, given her RFC, she could perform a significant number of jobs in the national economy (step five).  (AR 26–27.)  In making this determination, the ALJ posed a series of hypothetical questions to the VE.  (AR 49–54.)  In response, the VE testified that a person with the RFC specified above could perform the jobs of office helper, routing clerk, collator operator, bench assembler, and router.  (AR 50–51.)  The ALJ ultimately concluded Plaintiff was not disabled from August 1, 2010, through the date of the decision.  (AR 28.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on January 25, 2023.  (AR 5–10.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. §§ 404.981, 416.1481.

### III.    LEGAL STANDARD

**A.    Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind

6

of substantial gainful work which exists in the national economy." *Id.* at § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also* 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.   Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). *See also Ford v. Saul*, 930 F.3d 1141, 1153–54 (9th Cir. 2020). "Substantial evidence . . . is 'more than a mere scintilla,' " and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v.*

7

*NLRB*, 305 U.S. 197, 229, (1938)).  *See also Ford v. Saul*, 930 F.3d 1141, 1153–54 (9th Cir. 2020).  "This is a highly deferential standard of review . . . ."  *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.") (citations omitted).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner.  *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).  Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings.  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'"  *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)).  Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'"  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Circ. 2008) (quoting *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

### IV.   DISCUSSION

Plaintiff contends that the ALJ erred in discounting the medical opinion of Dr. Zaigham.  (Doc. 14 at 14–18; Doc. 17 at 1–4.)  The Commissioner responds that the ALJ's consideration of

8

1  Dr. Zaigham's opinion was proper and supported by substantial evidence.  (Doc. 16 at 5–9.)  The
2  Court agrees with the Commissioner.

3  **A.     Legal Standard**

4  Plaintiff's claims for DIB and SSI are governed by the agency's "new" regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017. 20 C.F.R. §§ 20 C.F.R. § 404.1520c, 416.920c.  The regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness.  20 C.F.R. §§ 20 C.F.R. § 404.1520c(b)(2), 416.920c(b)(2).  And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions."  20 C.F.R. §§ 20 C.F.R. § 404.1520c(a)–(b); 416.920c(a)–(b).

Recently, the Ninth Circuit issued the following guidance regarding treatment of physicians' opinions after implementation of the revised regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources.").  Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations.  Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).  Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence."  *Id.* at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings."  *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b)).  *See also id.* § 416.920c(b).  "Supportability means the

9

extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Id*. at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). *See also id*. § 416.920c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). *See also id*. § 416.920c(c)(2).

As the Ninth Circuit also observed,

> The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion. *See id.* § 404.1520c(c)(3). Thus, an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id*. § 404.1520c(c)(3)(i)–(v). However, the ALJ no longer needs to make specific findings regarding these relationship factors:

*Woods*, 32 F.4th at 792. "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same.'" *Id*. (quoting § 404.1520c(b)(3)). *See also id*. § 416.920c(b)(3). "In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'" *Id*. Finally, if the medical opinion includes evidence on an issue reserved to the Commissioner, the ALJ need not provide an analysis of the evidence in his decision, even in the discussions required by 20 C.F.R. §§ 404.1520c, 416.920c. *See* 20 C.F.R. §§ 404.1520b(c)(3), 415.920b(c)(3).

With these legal standards in mind, the Court reviews the weight given to Dr. Zaigham's opinion.

**B.    Analysis**

The ALJ found that Dr. Zaigham's opinion "unpersuasive," reasoning

> This opinion was submitted on a checkbox form and not supported by rationale. It is also poorly supported by Dr. Zalgham's [*sic*] own treatment notes, showing normal gait, strength, and range of motion, which is inconsistent with a need to elevate legs for back pain. Moreover, this opinion is generally inconsistent with the evidence as a whole showing generally normal gait and strength, albeit with some findings of antalgic gait later in the record, and reduced range of motion.

(AR 25.) The Court concludes that the ALJ properly evaluated the supportability and consistency of Dr. Zaigham's opinion. As to supportability, the ALJ observed that the opinion, submitted on a "checkbox form," lacked rationale and was inconsistent with Dr. Zaigham's own treatment notes. (AR 25.) The lack of supporting explanation was a proper consideration in evaluating the supportability of Dr. Zaigham's opinion. *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (requiring the ALJ to consider "supporting explanations presented by a medical source."). *See also Woods*, 32 F.4th at 794 (substantial evidence supported finding that medical opinion, expressed in a "fill-in-the-blank questionnaire," was "not persuasive because it is not supported by any explanation" or "pertinent exam findings."); *Ponce v. Comm'r of Soc. Sec.*, No. 1:20-cv-01664-EPG, 2022 WL 196529, at *3 (E.D. Cal. Jan. 21, 2022) (declining to find the ALJ erroneously rejected medical opinion where given on a "checkbox form with no significant narrative explanation" and "no citation to record evidence."). In addition, a lack of support by Dr. Zaigham's own objective findings was a proper consideration in evaluating the supportability of her opinion. *See, e.g., Trezona v. Comm'r of Soc. Sec.,* No. 1:21-cv-00792-EPG, 2022 WL 1693493, at *3 (E.D. Cal. May 26, 2022); *Amanda B. v. Comm'r, Soc. Sec. Admin.*, No. 1:20-cv-01507-YY, 2022 WL 972408, at *7 (D. Or. Mar. 31, 2022).

Plaintiff does not challenge the ALJ's supportability findings. (*See* Doc. 14 at 15–18. *See also* Doc. 16 at 7.) Instead, she finds fault with the ALJ's consistency analysis, contending that it is based on a "gross mischaracterization of the record" because it "fails to consider [] objective imaging results" and "focus[es] on just benign findings." (Doc. 14 at 15–17.) Regarding objective imaging, Plaintiff cites lumbar spine MRI results from 2010, 2012, 2014, and 2016 that she alleges that ALJ did not consider. (Doc. 14 at 15–16 (citing AR 719, 808–09, 851, 871–72).) A review of the opinion, however, demonstrates that the ALJ <u>did</u> discuss each of these MRI results, noting that all of them showed similar mild to moderate degenerative changes at L4–L5 and mild foraminal narrowing at L4–L5 and L5–S1. (AR 23 (citing AR 423 (duplicate of AR 851), 435–36 (duplicate of AR 871–72), 719, 808–09).)

Plaintiff also asserts the ALJ engaged in a "cherry-picked analysis" by failing to consider Plaintiff's "abnormal examinations," citing examination results from October 2013 and January

2020. (Doc. 14 at 16 (citing AR 607, 861, 862).) Again, the ALJ did <u>not</u> ignore this evidence: both of these records were considered and discussed in their decision. (*See* AR 23 (citing AR 610–11 (identical results to AR 607); AR 24 (citing AR 861–82).) Specifically, the ALJ observed that the October 2013 examination results documented some abnormalities, including diminished lumbar range of motion with associated tenderness and a positive straight leg raise test, but also showed normal strength and steady gait. (AR 23.) The January 2020 results were "more mixed" according to the ALJ, with Plaintiff demonstrating tenderness, diminished range of motion, and 4/5 lower extremity strength, but also taking only over the counter medication for pain. (AR 24.)

Plaintiff is correct that the ALJ must not "cherry-pick" instances of no or low symptomology without considering the context, such as instances of high symptomology. *See Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (an ALJ must not "cherry-pick" certain observations without considering their context); *see also Attmore v. Colvin*, 827 F.3d 872, 875 (9th Cir. 2016) (quoting *Tackett*, 180 F.3d at 1098) (the Court "cannot affirm . . . 'simply by isolating a specific quantum of supporting evidence,' but 'must consider the record as a whole, weighing both evidence that supports and evidence that detracts'"). The Court does not concur with Plaintiff, however, that the ALJ committed this error. As has been seen, and contrary to Plaintiff's contention, the ALJ did not fail to consider the records Plaintiff identifies. The true gravamen of Plaintiff's challenge to the ALJ's decision appears to be the ***conclusion*** the ALJ drew from these records, namely, that an RFC of a reduced range of light work adequately accounted for Plaintiff's "lumbar disc disease over the entire period at issue." (AR 24.) Plaintiff may disagree with this conclusion, but the Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002); *see also Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ."). When the evidence is susceptible to more than one rational interpretation, as is the case here, it is the Commissioner's conclusion that must be upheld. *See Ford*, 950 F.3d at 1159 ("Our review of an ALJ's fact-finding for substantial evidence is deferential"); *Thomas*, 278 F.3d at 954.

In sum, while the medical record reflects that Plaintiff has lumbar disc disease (AR 24), it was reasonable for the ALJ to conclude that the severity of the restrictions opined by Dr. Zaigham were unpersuasive in light of her own treatment notes and the record as a whole.  That the opinion lacked support and was inconsistent with the medical evidence was a legally sufficient finding based on substantial evidence.  The fact that the evidence could be interpreted differently, *e.g.*, in a manner more favorable to Plaintiff, does not render the ALJ's decision erroneous.  *See Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.  We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.") (citations omitted).  *See also Batson*, 359 F.3d at 1198.  Thus, the ALJ did not err by finding Dr. Zaigham's opinion unpersuasive.

## V.    CONCLUSION AND ORDER

After consideration of Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED.  The Clerk of Court is DIRECTED to enter judgment in favor of Defendant Martin O'Malley, Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:   **March 7, 2024**                       /s/ *Sheila K. Oberto*  
                                                     UNITED STATES MAGISTRATE JUDGE